# Lappe's Estate.

*Wills—Probate—Issue—Res adjudicata.*

Where a jury certifies that a decedent died possessed of a last will and testament, and that the last will and testament was mislaid or destroyed after his death, and there is nothing in the proceeding to indicate that the jury had in mind any particular will although there were apparently two wills in existence at the time, the proceeding is not res adjudicata of an issue to determine whether one of the wills, particularly specified and described, had not been destroyed animo revocandi by the testator himself.

Argued March 27, 1906. Appeal, No. 54, Oct. T., 1906, by C. O. Lappe et al., from decree of O. C. Allegheny Co., Oct. T., 1905, No. 218, refusing an appeal from register of wills in Estate of John Christian Lappe, deceased. Before MITCH-ELL, C. J., FELL, POTTER, ELKIN and STEWART, JJ. Reversed.

Appeal from register of wills.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the appeal.

*Hampton L. Carson*, with him *Jackson & Lang* and *White, Childs & Scott*, for appellants.—It is well settled that the jurisdiction of the common pleas in an issue devisavit vel non is limited to the specific questions of fact set out in the register's precept: Jackson v. Tozer, 154 Pa. 223; Bitner v. Bitner, 65 Pa. 347; Hoxworth v. Miller, 7 Pa. 458.

There is nothing res judicata in an issue devisavit vel non except what the statute makes so: Cavanaugh v. Buehler, 120 Pa. 441.

If the common pleas court did not have jurisdiction to try the question of the validity of the "Woodward" will, it is respectfully submitted that appellants are not barred by reason of anything done in that court or in the Supreme Court on appeal, nor by lapse of time, from attacking that jurisdiction now: Gordon's App., 93 Pa. 361.

*J. M. Stoner* and *D. F. Patterson*, for appellees.—The court below very properly dismissed the appeal on the ground of res adjudicata: Kiern v. Ainsworth, 95 Pa. 310; Garber v. Doersom, 117 Pa. 162; Kelly v. Eichman, 3 Whart. 419; Egbert v. Darr, 3 W. & S. 517; Campbell v. Stephens, 66 Pa. 314; Weidner v. Matthews, 11 Pa. 336; Zimmerman v. Wengert, 31 Pa. 401; Huckestein v. Kaufman, 173 Pa. 199; Benson v. Maxwell, 105 Pa. 274; Ritter v. Sieger, 105 Pa. 400.

OPINION BY MR. CHIEF JUSTICE MITCHELL, May 24, 1906:

This litigation has had the misfortune to be presented piecemeal, with the result that after four years of time, two jury trials, two appeals to this court, and the various proceedings in the orphans' court the substantial question at the basis is still the subject of doubt and difference of opinion in the court below. A careful statement of the facts is therefore necessary for a clear understanding of the present contention.

Lappe, the decedent, died in 1901, apparently intestate, and letters of administration were granted to a trust company.

In May, 1902, Anna M. Gfeller, a stepdaughter, presented a petition to the register averring that decedent had made a will in 1900, in which she was a beneficiary, and praying that it should be produced, or if lost its contents should be proved and a copy be admitted to probate. The parties cited having denied the facts alleged or disclaimed knowledge of them, the register issued his precept to the court of common pleas No. 2 and a trial was had with a result which was apparently treated as establishing the will set up in the petition, termed for convenience the Woodward will. On appeal the judgment was affirmed: Gfeller v. Lappe, 208 Pa. 48. A copy was then admitted to probate, as of a lost will.

Shortly after this probate, on petition of a granddaughter and others alleging that decedent had made a later will, the orphans' court opened the probate of the Woodward will, and the register issued a new precept to common pleas No. 1. On this a trial was had and a verdict rendered against the alleged later will, known for convenience as the Morgenroth will. On appeal the judgment on this issue was affirmed: Lappe v. Gfeller, 211 Pa. 462.

This result having been certified to the register, the orphans'

court held that the probate of the Woodward will was closed again and no further steps in that regard were required.

In October, 1905, the opponents of the Woodward will petitioned the orphans' court for allowance of an appeal from the probate of that will, on the ground that it had been destroyed animo revocandi by the testator himself. On hearing before Over, J., and testimony taken, the petition was dismissed, and subsequently exceptions were dismissed by the majority of the court, the president judge dissenting. The question on which the judges differed was whether the validity of the Woodward will was res adjudicata by the previous proceedings. That is the question now before us on this appeal from that decree.

The first matter for our consideration is whether this court has passed upon the question, or on anything relevant and material to it. An examination of the two decisions makes it clear that we have not. Gfeller v. Lappe, 208 Pa. 48 was an appeal from the judgment in C. P. No. 2 on the verdict under the first precept from the register. That precept and what it involved will be considered later on. What was before this court was solely a question of evidence. The only error assigned was the refusal of binding instructions for defendant, and the only question before us was indicated in the opinion of our Brother Fell, "Since this will was last seen in his (testator's) possession, and was not found after his death, the presumption was that he had destroyed it. To overcome this presumption and establish the existence of the will at his death testimony was presented," etc., which the opinion goes on to show was sufficient to go to the jury in rebuttal of the presumption. On the other hand, was urged the direct testimony that the testator had destroyed the will in his lifetime, but as was said in the opinion the veracity of the witness and the completeness of the identification of the paper he saw the testator destroy were for the jury. The validity of the will was apparently assumed by all parties after the verdict, and no opinion was expressed by this court upon it.

The second case, Lappe v. Gfeller, 211 Pa. 462, was an appeal from the judgment of C. P. No. 1, on the issue as to the Morgenroth will. As in the prior case the only questions raised were as to the evidence, and did not involve the Woodward

will at all.  So far therefore as the present question is concerned it is here for the first time.

Recurring now to the outline of the facts, supra, it is manifest that the hinge of the case is the first issue directed by the register to the court of common pleas No. 2.  The form in which this was sent to the court was "to try the following issues of fact, to wit:

"1.  Whether John Christian Lappe, deceased, died possessed of a last will and testament, and if so, was the same mislaid or destroyed after his death.

"2.  If the said John Christian Lappe, made his last will and testament, was the same destroyed on the—day of May, 1901, and was he at that time of sound mind so as to be able to revoke such will?"  The verdict certified back by the court was that Lappe "died possessed of a last will and testament, and, secondly, that the last will and testament of John Christian Lappe was mislaid or destroyed after his death."

This was the source of all the subsequent trouble.  Unfortunately, the precept was for a futile and inconclusive inquiry.  It raised no issue which was authorized by the statute, and neither it nor the verdict determined any fact material to the real controversy.  What the law contemplates is not a general inquiry whether the decedent left a will, but whether he left as a will the particular writing propounded for probate, attached to the precept, and submitted to the jury to find its execution and, in cases like the present of alleged loss, its continued existence and its terms.  The language of the Act of March 15, 1832, P. L. 135, is that the precept shall set forth the presentation for probate of "a certain writing hereto annexed" and the jury are "to try the validity of the said writing."  It is strongly urged that this will was in contemplation of the parties to the trial and evidence regarding it was submitted to the jury and therefore that the failure to attach a copy to the precept was "an immaterial variation" from the prescribed form which under sec. 43 of the statute should not vitiate the proceedings.  The bearing of the evidence will be considered later, but the omission of the writing itself cannot be considered an immaterial variance, it was the omission of the substantial basis of the whole proceeding.  To show the materiality of having the paper itself before the jury it is

only necessary to refer to the possibility of a conflict of testimony over the terms of the alleged will or the correctness of the copy put forward.

It is urged that at the trial the Woodward will was in the contemplation of all the parties, that the evidence in regard to it was fully put before the jury and therefore its validity, continuance, and contents, must be treated as the real issue and as having been decided by the verdict. But the conclusion does not follow. Even if it could be conceded that the jury might decide a matter not within the issue on the record before them, they have not done so. It is settled, of course, that in deciding any fact a jury must be assumed to have decided any other or collateral fact necessarily involved in the main finding. But this verdict was only that Lappe left a will, not this will, nor any other particular will, identified by date, contents, witnesses or otherwise. So far as appears there were at the time of the trial, in existence or at least as subjects of proof, two wills, the Woodward and the Morgenroth. Either would satisfy the terms of this verdict. No doubt the evidence before the jury related mainly if not entirely to the Woodward will, and was sufficient to satisfy them that Lappe left a will. But whether it would have satisfied them that this particular will was the one which he left, and that the terms of it were correctly set forth, we have no means of knowing. They did not so find in express terms, or by necessary implication, and the evidence on which they might have so found was not put before their minds as involving that question. It is certainly not desirable that the results of a verdict on a genuine trial should be lost for formal or technical defects. But it is still less so to have a verdict stretched beyond its express terms to cover a result which is not clearly within the intent of the jury even if it be conceded to be within their power. The establishment of the execution and contents of a lost will, especially in the face of the presumption arising from the fact that it was last known to be in the possession of the testator, is a matter requiring careful administration at all times and one in which loose practice may be peculiarly dangerous. On the whole case it is clear that the so-called Woodward will has not been passed upon directly by a jury or by anyone but the register. As it involves not only

the proof of the execution and contents of a paper not produced, but also the veracity of witnesses and the sufficiency of evidence to overcome a legal presumption, it is a matter justifying submission to a jury.

Decree reversed and appeal directed to be allowed.