## Wasco Estate.

Argued April 22, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Peter Rybak*, with him *O'Hare, Rybak and Galla-gher*, for appellant.

*R. S. Taylor, Jr.*, and *Justin D. Jirolanio*, with them *Edward G. Ruyak*, for appellee.

OPINION BY MR. JUSTICE JONES, October 12, 1971:

John Weldy Wasco, also known as John Wasco (testator), died on May 22, 1968, and an unsigned carbon copy of his alleged will was admitted to probate in Northampton County. Owing to the designation of Lehigh University as sole beneficiary under this instrument, testator's heirs filed an appeal from the admission to probate and the grant of letters testamentary in the Orphans' Court Division of the Northampton County Court of Common Pleas. Following an evidentiary hearing and the submission of briefs, a decree nisi was entered dismissing the appeal from probate. One heir (contestant) filed timely exceptions which were dismissed by the court en banc. This appeal followed.

Two unrelated issues are pressed on appeal: (1) whether testator was a resident of Northampton County; and (2) whether the Register of Wills properly admitted an unsigned copy of testator's last will to probate, the original being lost or destroyed.

Section 301 of the Fiduciaries Act of 1949 provides: "Letters testamentary or of administration on the estate of a decedent domiciled in the Commonwealth at the time of his death shall be granted only by the register of the county where the decedent had his last family or principal residence." Act of April 18, 1949, P. L. 512, Art. III, §301, as amended, 20 P.S. §320.301 (Supp. 1971). *See, also,* Act of June 28, 1951, P. L. 638, Art III, §301, 20 P.S. §1840.301. "The words 'family or principal residence', adopted from the Fiduciaries Act of June 7, 1917, P. L. 447, Section 2(a), have been construed to mean domicile as opposed to temporary residence: Obici Estate, 373 Pa. 567, 570, 97 A. 2d 49." *Publicker Estate,* 385 Pa. 403, 405, 123 A. 2d 655, 658 (1956). *Accord, Loudenslager Will,* 430 Pa. 33, 240 A. 2d 477 (1968). It is contestant's position that testator's principal residence was in Lehigh County and that the court below lacked jurisdiction. So framed, our initial inquiry is whether testator died a resident of Northampton County or Lehigh County.

Contestant stresses certain facts: (1) testator, a bachelor pharmacist, owned a two-story concrete block structure in Salisbury Township, Lehigh County, and went there on Sundays and holidays when his pharmacy store located in the City of Bethlehem, Northampton County, was closed; (2) testator was listed in the Bethlehem tax records and city directory as a resident of Salisbury Township; and (3) the instrument in question recited testator's declaration that he was a resident of Salisbury Township.

We share the view of the court below that the existence of the structure in Lehigh County is of no moment. That building was without electricity, gas, plumbing or utilities. Although several books and a few pieces of furniture were found, there was no evidence of personal items. Several witnesses stated it was uninhabitable. On the other hand, testator re-

ceived all mail at the Bethlehem pharmacy and filed his federal income tax returns from that address. In addition, the store contained a gas stove, cooking utensils, shaving equipment, toilet facilities and a sink. Corroborating this evidence, several witnesses testified that testator both ate and slept in the rear of the store.

Similarly, testator's declarations in his will and the tax records do not carry great weight. " '[W]here one's conduct conclusively shows his residence to be in one place, his expressed intention that it shall be in another place may not override the fact so as to locate it there. The intention in that case will be inferred from residence alone in the face of contrary expressions of purpose.' " *Dorrance's Estate*, 309 Pa. 151, 166, 163 Atl. 303, 308 (1932). On balance, we are satisfied that testator's last residence was Northampton County and that the court below had jurisdiction.

A first will was prepared for testator by attorney Justin D. Jirolanio in February, 1967, naming Lehigh University as sole beneficiary. Thereafter, a second will was prepared again designating Lehigh University as sole beneficiary but with specific instructions. Each will was properly executed and each original remained in the custody of testator while attorney Jirolanio retained the copy. Several witnesses testified as to the whereabouts of each original and that testator stated his intent to bequeath everything to Lehigh University. Moreover, attorney Jirolanio testified that about 11:30 a.m. on May 22, 1968, approximately seven and one-half hours before testator's body was discovered, testator showed him the second will, indicated he was satisfied with its contents and said the first will was destroyed. However, a thorough search of testator's premises failed to uncover the second will; the torn pieces of the first will were found.

The procedure and presumption applicable to the instant appeal were summarized in *Murray Will,* 404 Pa. 120, 129, 171 A. 2d 171, 175-76 (1961) : ". . . Certain proof is essential to establish a destroyed or suppressed will: (1) that testatrix duly and properly executed the original will; (2) that the contents of the executed will were substantially as appears on the copy of the will presented for probate; (3) that, when testatrix died, the will remained undestroyed or unrevoked by her: Mitchell v. Low, 213 Pa. 526, 63 A. 246. The instant record clearly establishes that decedent duly and properly executed her will on June 29, 1956 and that the contents of that will were substantially as set forth in the copy of the will as probated. The difficulty arises in proving the status of that will when decedent died.

". . . In determining such status, we must bear in mind that where a testatrix retains the custody and possession of her will and, after her death, the will cannot be found, a presumption arises, in the absence of proof to the contrary, that the will was revoked or destroyed by the testatrix: Bates's Estate, 286 Pa. 583, 134 A. 513, 48 A.L.R. 294. To overcome that presumption, the evidence must be positive, clear and satisfactory: Dalbey's Estate, 326 Pa. 285, 192 A. 129." As in *Murray Will,* the only question is whether the second will, a copy of which was admitted to probate, was revoked.

On these facts there is ample evidence that testator was satisfied with his second will approximately seven and one-half hours before his body was discovered. Moreover, several witnesses testified as to testator's habitual retention of all papers, including his mutilated first will which was found in the store. Considering testator's habits and his decision to retain the torn pieces of his first will, it seems most strange that testator did not retain any portion of the second will

if that will was similarly revoked. We are of the opinion that this evidence clearly and satisfactorily rebuts the presumption that the second will was revoked or destroyed by testator.

Decree affirmed. Estate to pay costs.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.