(No. 30542.— )

IN RE ESTATE OF LILLIAN A. HOLMBERG.——(LOIS WIERSEMA, Exrx., *et al.,* Appellants, *vs.* THE PEOPLE OF THE STATE OF ILLINOIS *et al.,* Appellees.)

*Opinion filed May 20, 1948—Rehearing denied September 15, 1948.*

HENRY C. PIEL, of Harvey, and WILSON & MCILVAINE, of Chicago, (GEORGE A. H. SCOTT, and W. S. BODMAN, of counsel,) for appellants.

GEORGE A. LANE, guardian *ad litem,* W. AYERS KEPLINGER, and DON M. PEEBLES, *amici curiae,* all of Chicago, (LEON LECOUR DROLET, of counsel,) for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County denying probate to an instrument alleged to

be the last will and testament of Lillian A. Holmberg, deceased. The case was heard in the circuit court on appeal from an order of the probate court of Cook County refusing to admit the instrument to probate. Part of the estate consisting of realty, a freehold is necessarily involved.

The facts are not in dispute. Born Lillian A. Anderson, decedent entered the home of Charles A. Holmberg at an early age, was reared by him, adopted his name and, upon his death, inherited property from him after successfully defending an action to contest his will brought by certain of his heirs. In later years, she also accumulated other property. On November 10, 1941, Lillian Holmberg, then between sixty and seventy years of age and a patient in a hospital, duly executed the typewritten original of the instrument alleged to be her will. At the same time, and attested by the same witnesses, she also executed a carbon copy of the will. Retaining the executed carbon copy, Miss Holmberg delivered the original to a friend for safekeeping. Subsequently, she recovered from the particular illness which had caused her hospitalization and returned to her home.

By her will, Lillian Holmberg devised and bequeathed all her property to the Illinois Humane Society and the Anti-Cruelty Society of Chicago, share and share alike. In November, 1943, she intimated to the managing director of the Anti-Cruelty Society that the association was a beneficiary in her will, saying that it would be to his interest to assist her in handling an accident claim because "the more I get, the more you will get."

Miss Holmberg died January 23, 1946, leaving no known heirs. During the intervening years, she had not visited the friend to whom she had entrusted the typewritten original of her will. On her death, however, he filed the instrument in the probate court and the named executrix filed a petition to probate the will. A few days later, the carbon impression of the will was found in a

pocketbook in her home and it, too, was filed with the clerk of the probate court. The carbon impression, when found, had the word "Void" written diagonally down the length of the first page in two places, each of the huge handwritten words extending across each paragraph on the page. Between the words thus written there appears the signature of the deceased. Similarly, that part of the second page of the instrument above the signature and attestation contains the word "Void" written in extremely large letters. Signatures of the decedent appear both above and below the word "Void" on the second page. All agree that this writing was not there when the carbon impression was executed. Furthermore, there is no controversy respecting the genuineness of the signatures or decedent's authorship of the word "Void." At the bottom of the second page, below the attestation clause, the word "Copy" appears, written in letters of normal size by an unknown hand.

Proponents of the will are the executrix and the beneficiaries. Other parties having an interest in the case are the public administrator, as concerns his right to administer the estate, the State of Illinois, in the event of escheat, and certains heirs of Charles A. Holmberg, alleged adoptive parent of the deceased, who claim by virtue of section 14 of the Probate Act. (Ill. Rev. Stat. 1947, chap. 3, par. 165.) In the circuit court, the appearances of the three last-named parties were stricken, and one of the attorneys for the public administrator was appointed *amicus curiae*. On the motion of the heirs of Charles A. Holmberg, the circuit court appointed a guardian *ad litem* for the unknown minor and incompetent heirs of Lillian Holmberg, the probate court having previously found that her heirs are unknown. The other appearances having been stricken, the guardian *ad litem* became and remains the sole objector to the admission of the alleged will to probate.

The probate court and the circuit court, in denying

probate, both found that Lillian Holmberg had executed duplicate typewritten wills, one an original impression and the other a carbon impression, that subsequently she wrote the word "Void" and her name across each page of the carbon impression, and that the words so written were effective to revoke both copies of her will. In this court, proponents contend, first, that neither the probate court nor the circuit court had jurisdiction to determine the question of revocation and, second, that the writing across the face of the executed carbon impression did not con-·stitute an effective revocation of the original impression. By their first contention, proponents seek to relitigate a settled proposition. *Research Hospital* v. *Continental Illinois Bank and Trust Co.* 352 Ill. 510, contains a detailed exposition of the applicable law and firmly establishes the right of probate courts and county courts to hear testimony on the question of revocation and to deny probate where it appears that the alleged will is no will at all by reason of revocation. The adoption of the Probate Act of 1939 wrought no changes in the law in this respect. Compare Ill. Rev. Stat. 1947, chap. 3, par. 221, and Ill. Rev. Stat. 1937, chap. 148, par. 2. See *Bley* v. *Luebeck,* 377 Ill. 50. On appeal, the circuit court has the same jurisdiction as the county or probate court in the original proceeding and, consequently, the circuit court must be empowered to determine the issue of revocation. (Ill. Rev. Stat. 1947, chap. 3, pars. 221, 223, 487; *Bley* v. *Luebeck,* 377 Ill. 50.) We have re-examined and adhere to the rule announced in the *Research Hospital case.*

Proponents' second contention goes to the merits of the case. The pertinent statute ordains: "A will may be revoked only (a) by burning, cancelling, tearing, or obliterating it by the testator himself or by some person in his presence and by his direction and consent * * *." (Ill. Rev. Stat. 1947, chap. 3, par. 197.) The testatrix, Lillian Holmberg, selected cancellation as her method of revoca-

tion. Had she executed but one copy of her will, there can be no doubt that the word "Void" and her signature written across the face of the instrument would constitute an effective revocation. In this respect, *In re Will of Barrie,* 393 Ill. 111, is directly in point and is controlling. The decisive question to be determined, however, is whether an otherwise effective revocation of a will is nullified by the continued existence, in the possession of another, of a duplicate original bearing no mark or evidence of revocation.

The question presented has not heretofore been considered by this court. Indeed, except in New York, courts of review in other jurisdictions have had little opportunity to pass upon questions involving the revocation of wills executed in duplicate. Nevertheless, a review of the authorities establishes the general rule that the cancellation by a testator of one of two duplicate originals of his will cancels and revokes the other duplicate original left in the custody of another person. (*In re Lawrence's Will,* 138 N. J. Eq. 134; *In re Estate of Bates,* 286 Pa. 583; *In re Wall's Will,* 223 N. C. 591; *Crossman* v. *Crossman,* 95 N. Y. 145; *In re Schofield's Will,* 72 Misc. Rep. 281, 129 N. Y. Supp. 190; *In re Field's Will,* 109 Misc. Rep. 409, 178 N. Y. Supp. 778; *In re Robinson's Will,* 257 App. Div. 405, 13 N. Y. Supp. 2d 324.) See: *In re Wehr's Will,* 247 Wis. 98; *O'Neall* v. *Farr,* 30 S.C.L. (1 Rich.) 80. Cf: *In re Walsh's Estate,* 196 Mich. 42; *Managle* v. *Parker,* 75 N. H. 139; *Combs* v. *Howard,* 131 S.W. 2d (Tex. Civ. App.) 206. While it is unnecessary to agree with everything said in each of the cases cited, we see no reason to deviate from the general principle evolved over a period of many years and uniformly adopted by courts considering the matter for the first time. *In re Wall's Will,* 233 N. C. 591; *In re Wehr's Will,* 247 Wis. 98; *In re Estate of Bates,* 286 Pa. 583.

In point of fact, the case at bar presents a stronger fact situation than many of the cases cited. The cases relied

upon do not involve revocation by cancellation, but rather each is concerned with the question of revocation arising from the testator's actual or presumed destruction of the duplicate original retained by him. The principle applied is that "* * * where a testator intentionally destroys, or is presumed to have destroyed *animo revocandi,* the copy of his duplicate will retained in his possession, in the absence of proof to the contrary, that copy and the duplicate in another's hand will be held revoked." (48 A.L.R. 297.) The decisions differ only in the application of rule, that is to say, in the degree of proof necessary to overcome the presumption of intentional destruction arising from the failure to find the testator's copy of his will. In any event, the unexplained loss of the testator's duplicate original is generally held sufficient to constitute an effective revocation of both the duplicate originals. (*In re Lawrence's Will,* 138 N. J. Eq. 134; *In re Estate of Bates,* 286 Pa. 583; *In re Robinson's Will,* 13 N.Y.S. 2d 324.) In the present case, however, we do not rely on anything even approaching a presumed intention to revoke. Here, we have actual and definite evidence of the testator's intent. The words "Void" and the signatures appearing across the face of both pages of the duplicate original retained by Lillian Holmberg not only constitute a statutory act of revocation but are proof positive of her intent to revoke.

Proponents, of course, contend that despite Miss Holmberg's authorship of the revocatory words in her duplicate original, she did not intend to revoke the will. They argue that the word "Void" refers to the carbon impression alone. From the circumstance that her duplicate original of the will was a carbon impression marked "Copy" by an unknown hand they infer that she regarded it only as a memorandum of her true will. That the testatrix could have easily regained possession of the other duplicate original of her will; that more than two years before she died she intimated to an officer of the Anti-Cruelty Society that

his association was a beneficiary under her will; that, if the alleged will is not admitted to probate, part of her estate may pass to the heirs of Charles A. Holmberg and the rest will very likely escheat to the State—all these facts are viewed as further evidence of the absence of an intention to revoke. The arguments advanced are ineffectual. The act of Lillian Holmberg in writing "Void" across the face of her duplicate original of the will clearly bespeaks her intent to cancel and avoid the will in its entirety. Her intention thus expressed is not overcome by the circumstances relied upon by proponents.

We hold that decedent's revocation of the executed carbon copy of her will was sufficient and effective to revoke the executed original impression of the same will which she had entrusted to the custody of a friend.

The order of the circuit court of Cook County is affirmed.

*Order affirmed.*